UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
CONCETTA NYMAN,                   )
        Plaintiff,                )
                                  )
v.                                )        Civil Action No. 05-10412-JLT
                                  )
FEDERAL RESERVE BANK              )
OF BOSTON,                        )
        Defendant.                )
_____)

AFFIDAVIT OF MARIANNE HUGHES BICKERTON

Marianne Hughes Bickerton, being first duly sworn, states as follows:

1.      I am employed as Assistant Vice President and Assistant General Counsel of the
Federal Reserve Bank of Boston, the defendant in the above-captioned matter.  I am responsible
for, among other things, representing the Bank in matters filed with the Equal Employment
Opportunity Commission ("EEOC") and developing and overseeing the implementation of the
Bank's employment-related policies.

2.      I represented the Bank before the EEOC and the Massachusetts Commission
Against Discrimination in the discrimination charges filed against the Bank by Concetta Nyman.
A complete and genuine copy of the Charge of Discrimination filed against the Bank by Ms.
Nyman is attached hereto as Exhibit 1.

3.      A complete and genuine copy of the Dismissal and Notification of Rights issued
by the MCAD in Ms. Nyman's charge of discrimination is attached hereto as Exhibit 2.

4.      A complete and genuine copy of the Bank's sick leave policy in effect as of the time of Ms. Nyman's discharge from the Bank is attached hereto as Exhibit 3.

5.      Ms. Nyman took a six-and-a-half month leave of absence starting on July 31, 2000.  She filed a Worker's Compensation claim for this period.  Pursuant to the Bank's sick leave and workers compensation policy, the Bank supplemented Ms. Nyman's Worker's Compensation payments to equal her full salary, with the result that she suffered no loss of income during her leave.

6.      In September 2003, Ms. Nyman filed a claim for benefits under the Bank's long-term disability ("LTD") insurance plan.  That claim was denied on December 2003 by Liberty Mutual, then the Bank's LTD insurer.  A complete and genuine copy of a letter to Ms. Nyman from Liberty Mutual, the former third-party administrator of the Bank's long-term disability plan, is attached hereto as Exhibit 4.

7.      Ms. Nyman appealed the denial of her claim.  The Bank continued to pay Nyman her full salary using her accrued sick leave through April 3, 2004 while her appeal was pending.

8.      The Bank's sick leave policy prohibits sick leaves of longer than one year.  Under this policy, Ms. Nyman would have had to return to work by April 3, 2004 or her employment would have terminated pursuant to the policy.

9.      Notwithstanding the Bank's sick leave policy, the Bank decided on April 3, 2004 to continue Nyman's employment and place her on an unpaid leave of absence until her appeal of the denial of her claim for long term disability benefits was decided.

10.      In 2004, CIGNA Group Insurance became the third-party administrator of the Bank's long-term disability plan.  A complete and genuine copy of a letter to Ms. Nyman from CIGNA regarding her claim for benefits is attached hereto as Exhibit 5.

{B0512704; 2}

11.    The Bank discharged Ms. Nyman on April 3, 2004 because she did not return to work after her appeal was denied.  A complete and genuine copy of the notice of termination sent to Ms. Nyman on April 7, 2004 is attached hereto as Exhibit 6.

SIGNED UNDER THE PENALTIES OF PERJURY
THIS 11th DAY OF MAY, 2006.


/s/  Marianne Hughes Bickerton
Marianne Hughes Bickerton


Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 15, 2006.

/s/ Ilene Robinson Sunshine

{B0512704; 2}

EXHIBIT 1

**The Commonwealth of Massachusetts**
Commission Against Discrimination
**One Ashburton Place , Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

---

MCAD DOCKET NUMBER: 04BEM01925          EEOC/HUD CHARGE NUMBER: 16CA402088
FILING DATE: 06/23/04                   VIOLATION DATE: 04/03/04

---

Name of Aggrieved Person or Organization:
Concetta Nyman
28 Suffolk Avenue
Swampscott, MA 01907
Primary Phone: (781)598-6619 ext. _____

---

Named is the employer, labor organization, employment agency, or state/local government agency who
discriminated against me:
Federal Reserve Bank of Boston
Attn: Director of Human Resources
600 Atlantic Avenue
Boston, MA 02106
Primary Phone: (617)973-3000 ext. _____

No. of Employees:          25+

Work Location: Boston

---

Cause of Discrimination based on:
Disability, motor/limb (including use of other orthopedic devices).

---

**The particulars are:**
I, Concetta Nyman, the Complainant believe that I was discriminated against by Federal Reserve Bank of
Boston, on the basis of Disability. This is in violation of M.G.L. 151B Section 4 Paragraph (16) and Title
VII, ADA.

See attached

---

I hereby verify, under the pains and penalties of perjury, that I have read this complaint and the allegations
contained herein are true to the best of my knowledge.


                                        _____
                                        (Signature of Complainant)




MCAD Docket Number 04BEM01925, Complaint

# CHARGE OF DISCRIMINATION
## MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION

RECEIVED
JUN 2 3 2004
COMMISSION AGAINST
DISCRIMINATION

Docket #: 041301925
EEOC NUMBER: 16CA402088

FILING DATE:
VIOLATION DATE: 4-3-04

NAME AND ADDRESS OF AGGRIEVED
PERSON OR ORGANIZATION:

CONCETTA NYMAN
28 SUFFOLK AVENUE
SWAMPSCOTT, MA 01907

TELEPHONE NUMBER:

(781) 598-6619

NAME OF RESPONDENT(S):

FEDERAL RESERVE BANK OF
BOSTON
600 ATLANTIC AVENUE
BOSTON, MA 02106
(617) 973-3000

NUMBER OF EMPLOYEES:

AT LEAST 50

CAUSE OF DISCRIMINATION BASED ON:

DISABILITY

THE PARTICULARS ARE:

1.  I charge Respondent with discrimination on the basis of disability in violation of Mass.

    Gen. L. c. 151B and any other applicable state and federal laws or regulations.

2.  I have been employed by Respondent for approximately 35 years and was most recently

    employed as a senior cash paying teller.

3.  On or about July 31, 2000, I started to suffer from bilateral frozen shoulders, due to my

    employment.

4.  As a result, I collected workers' compensation for approximately six months.

5.  I subsequently returned to work on or about February 12, 2001, with a note from my
    rheumatologist, Dr. Amante.

6.  Although Dr. Amante recommended that I return to work with restrictions, Respondent
    did not honor Dr. Amante's requests and had me working with a high speed machine.

7.  As I result, I developed tendinitis and bursitis in both shoulders.

8.  In approximately February 2003, I met with the nurse from Respondent, who stated that I
    should be working with at least three other people, instead of the two people that I was
    working with.

9.  When I informed my manager, Joe Bosco of this fact, he stated that it was unacceptable
    and that he would tell the nurse not to change her mind.

10. As a result of my problems with my shoulders, I have been unemployed since March 26,
    2003.

11. On or about November 3, 2003, I applied for Long Term Disability benefits as a result of
    my problems with my shoulders.

12. Such claim was denied on or about May 4, 2004.

13. On or about May 7, 2004, I received a letter from Karen Foley, Employment Services
    Manager, stating that my employment was terminated, effective April 3, 2004.

14. I would have been able to perform the essential functions of my job if I had been given
    the requested reasonable accommodations.

15. I have experienced emotional distress and associated symptoms, including stress,
    frustration and anxiety.

16. I have lost income as a result of Respondent's actions.

I ALSO WANT THIS CHARGE FILED WITH THE EEOC

I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER.  I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES.

I SWEAR OR AFFIRM THAT I HAVE READ THIS COMPLAINT AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

CONCETTA NYMAN

SWORN TO AND SUBSCRIBED BEFORE ME THIS __21ˢᵗ__ DAY OF __JUNE__ ,2004.

NOTARY PUBLIC:_____

MY COMMISSION EXPIRES: __12-5-08__

EXHIBIT 2

*MR — For distribution*

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
ONE ASHBURTON PLACE, ROOM 601 BOSTON, MA 02108
(617) 727-3990

-DISMISSAL and NOTIFICATION of RIGHTS-

AUG 2 4 2004

| To: | Concetta Nyman | MCAD Case: Nyman v. Federal Reserve Bank of Boston |
| | 28 Suffolk Avenue | MCAD Docket #: 04-13-01925 |
| | Swampscott, MA 01907 | EEOC No: 16CA402088 |
| | | Investigator: Jeannine Rice |

Your complaint is dismissed for the following reason(s):

[ X ]    The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[  ]    Respondent employs less than the required number of employees.

[  ]    Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]    You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[  ]    The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]    The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[  ]    The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[  ]    Other:

-NOTICE OF APPEAL-

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this commission within 10 days after receipt of this notice. Your appeal of the dismissal must be made in writing by you or your attorney to the appeals clerk of this Commission. (Attention: Ms. Nancy To).

All employment complaints, where applicable, were filed by the MCAD with the Equal Employment Opportunity Commission. Our finding, which will be forwarded to its area office, One Congress Street Boston, MA will be given substantial weight provided that such findings are in accordance with the requirements of Title VII of the Civil Rights Act of 1964, the ADEA, and/or the ADA as amended.

Walter J. Sullivan
Investigating Commissioner

Date: 8/24/04

Mary Bickerton, Esq.
Assistant General Counsel
Federal Reserve Bank of Boston
600 Atlantic Avenue T-2
Boston, MA 02205

TO:        Case File
Nyman, Concetta v. Federal Reserve Bank of Boston
04-13-01925
EEOC#: 16CA402088
No. of employees: 100+

FROM:     Jeannine Rice

RE:        Recommendation for Dismissal of Complaint

**Issues Investigated:**

Whether Complainant was subjected to discrimination due to her Disability (Bilateral Frozen Shoulders) when she was terminated by her employer following her year-long absence in violation Chapter 151B, §4; ¶16 and the ADA.

**Summary of Findings:**

Complainant worked for the Federal Reserve Bank of Boston which is a federal instrumentality. The Massachusetts Commission Against Discrimination does not have jurisdiction over the Federal Reserve Bank of Boston because state law is pre-empted by the unit of federal law under the Supremacy Clause. A find of Lack of Jurisdiction is recommended.

_Jeannine K Rice_
Jeannine K. Rice, Investigator

_Jean A. Clanton_
_Shelley Sullivan Jr._   8/24/03
Jean A. Clanton, Supervisor

EXHIBIT 3

Federal Reserve Bank of Boston

3.21

## PERSONNEL POLICIES AND PRACTICES

| Section | Subject |
|---|---|
| **Sick Leave** | **Accrual Process and Administrative Guidelines** |

### General

Employees are expected to make every effort to be at work every scheduled workday. However, to protect employees against salary loss during periods of absence due to illness or injury, particularly periods of absence due to protracted illness or injury, the Bank provides a generous sick leave plan. Sick leave benefits apply only to absences caused by illness or injury.

This policy sets forth the accrual process for accumulating sick leave and related administrative guidelines and procedures. Please refer to the policy on Attendance Guidelines (7.6), which describes the general standards of attendance that apply to all Bank employees.

### Full-time Employees

Full-time employees accumulate sick leave at the rate of 10 hours (1.25 days) per month, for a total of approximately 15 days per year, up to a maximum allowable credit of 270 days.

### Part-time Employees

Class B part-time employees accumulate sick leave credit as follows:

- Part-time employees who work 30 to 37.25 hours per week earn 6.25 hours of sick leave per month, or the equivalent of ten 7.50-hour days per year.

- Part-time employees who work 17 to 29.75 hours per week earn 5 hours of sick leave per month, or the equivalent of eight 7.50-hour days per year.

For Class B part-time employees, the maximum allowable sick leave credit is 900 hours.

NOTE: Class A part-time and temporary employees do not earn sick leave credit.

### Changing Status

Part-time to Full-time - Part-time employees who transfer to full-time status retain all accrued sick leave credit and begin accumulating additional credit as full-time employees.

Full-time to Part-time - Full-time employees who transfer to part-time status retain full pay sick leave credit up to the part-time maximum (900 hours). Excess accumulated sick leave (including half-pay sick leave accumulated before 1998) will be maintained on employees' records and be reinstated upon a return to full-time work status. Transferees who have not attained the 900-hour limit at time of transfer will accumulate additional sick leave credit as part-time employees.

### Administrative Guidelines

These administrative guidelines apply to full-time and Class B part-time employees.

Federal Reserve Bank of Boston                                    3.21

# PERSONNEL POLICIES AND PRACTICES

- Sick leave with pay (full pay or half pay leave accumulated before 1998 or a combination of both) may not exceed one calendar year of continuous absence.

- Employees who are absent due to illness for an entire month do not earn sick leave for that month.

- Employees who have used all of their accumulated sick leave or if absent prior to the first of the month following completion of three months of employment will be placed on a leave-no-pay status.

- Abuse of sick leave will result in appropriate disciplinary measures.

**Waiting Period**

Although employees begin accumulating sick leave credit in the first month of employment, they must satisfy a three-month waiting period before any sick leave credit may be used.

**Half Pay Sick Leave**

As of April 1998, half-pay sick days are no longer accrued. However, the half-pay sick days already earned by employees as of that time remain in their accounts. Sick leave at half pay cannot be used until employees have been absent due to illness or injury for 30 consecutive calendar days. Should all accrued full-pay credit be used prior to or during the waiting period, employees are placed on a no-pay status until the 30 consecutive calendar day waiting period has been satisfied.

**Reporting Procedure**

To be eligible for sick leave payments, employees must call their supervisor on the first day of absence and explain the nature of the illness and specify a projected date of return. If an employee is unable to call, then someone else should be asked to make the call. The time of the call should coincide with the time the employee is scheduled to begin work. Employees who do not call in will be placed on a no-pay status and will be coded No Report (NR). If the absence extends beyond a day, employees are expected to call their supervisor daily (or on some agreed upon schedule but at least once a week) with a report of progress. In cases where special circumstances exist, some other reporting arrangement may be made between the employee and supervisor. The Human Resources Department should be contacted only when the employee's supervisor, section head, or manager cannot be reached.

For absences of five days or more, within a one month period, the department may request that an employee submit a physician's note to the Health Services Unit justifying the reason for the absence from work. The department should apprise the Health Services Unit of absences of 5 days or more. Failure of an employee to submit physician's notes as requested could result in disciplinary measures, including discharge.

**Examination by Bank Physician**

The Bank reserves the right to require an employee who has been absent due to illness for more than 5 days within a 30 calendar-day period to be examined by the Bank's physician. In some cases employees will be required to submit to further medical evaluation by a physician designated by the Bank.

# PERSONNEL POLICIES AND PRACTICES

**Return to Work**

Employees who return to work after an illness of five or more consecutive days must report to the Health Services Unit after reporting to their supervisor so that the Bank can evaluate an employee's fitness to return to work. Night force employees should call Health Services prior to 4:45 p.m. on the day they plan to return to work. The Health Services Unit retains the option of requiring a physician's written notification of an employee's fitness to return to work. If there is a difference of opinion between the employee's physician and the Bank's physician, the Bank reserves the right to request the opinion of an outside physician. The Human Resources officer will consider all evaluations and recommendations and then make the final determination as to an employee's fitness to return to work.

**Family Sick Leave**

To assist employees in caring for immediate family members (including parents, spouses, children, and qualified domestic partners and their children), the Bank has updated its sick leave policy to allow employees to use a portion of their accumulated sick leave for family illnesses and medical appointments. Full-time employees may use up to five of their sick days per calendar year for these purposes. Part-time employees may use up to 18.75 hours per calendar year. Existing attendance guidelines and standards apply to these family sick leave absences. Also, family sick leave days may not be carried past December 31 of each calendar year.

It should be noted that employees may utilize the Bank's Small Necessities Leave Act (SNLA) policies and protections (see section 2.56) for limited periods of time to attend to the health care needs of a child or elderly relative (at least 60 years of age), including a qualified domestic partner. As noted in section 2.56, SNLA time may take a variety of forms, both paid and unpaid. However, available family sick leave must be used when SNLA is invoked for family health care needs. Family sick leave taken under SNLA (using the appropriate attendance-system code) will not be counted against an employee on the attendance grid.

NOTE: Family sick leave absences should not be confused with Family and Medical Leave Act (FMLA) absences. Family sick leave absences are approved by the employee's Department Manager. FMLA absences require formal certification by the Bank's Health Services Unit (see section 2.51).

**Re-employed Individuals**

Previous unused sick leave credits are not reinstated at time of re-employment.

**See also:**

Extended Illness
See Section 3.22

Flexible Hour Employees
See Section 2.23

Four-day Workweek Employees
See Section 2.24

Holiday Practice
See Section 3.4

Medical Dismissals
See Section 3.6

Worker's Compensation
See Section 3.23

EXHIBIT 4

Integrated Disability Manage. .  .t
P. O. Box 1507
Dover, NH 03821-1507
Telephone: (800) 210-7140
FAX  603-740-6348



**Liberty Life Assurance Company of Boston**
**Integrated Disability Management**

December 3, 2003
Via Federal Express

Concetta Nyman
582 Lynn Street
Malden  MA  02148-4719

RE:    Long Term Disability Benefits (LTD)
       Federal Reserve Employee Benefits
       Claim#:  779826

Dear Ms. Nyman:

We are writing in regard to your claim for disability benefits.  The Medical Board has completed a
thorough review of your eligibility for disability benefits, and has determined that benefits are not
payable.  The Long Term Disability (LTD) Plan for Employees of the Federal Reserve System
requires that to receive benefits you must meet the following definition of disability:

*"Total Disability" or "Totally Disabled" means, with respect to the first eighteen (18) months of any Period of
Disability, that the Member is unable, as determined by the Medical Board in its sole discretion, solely because of
mental or physical disease, or bodily injury, to work on a regular and full time basis at his own job or Another Job in
his Own Occupation.*

*After the first 18 months of disability, "totally disabled" means that the Member is unable, solely because of mental or
physical disease or bodily injury, to work at any reasonable occupation.  A reasonable occupation is any gainful activity
for which you are, or may reasonably become, qualified by education, training or experience.*

You submitted a claim for bursitis.  We received medical documentation from Dr. Singer.  Currently,
your file contains the following information:

- The Attending Physician's Statement shows that you have a diagnosis for osteoarthritis.
  You are seen every 2 to 3 months for treatment.  Your last office visit was November 10,
  2003.  Return to work is uncertain.  You have severe limitation of functional capacity and
  are incapable of minimum activity.  You were referred to Dr. Pastan, a rheumatologist.
- A Physical Capacities form indicates you cannot lift, kneel, push, pull or reach above
  shoulder level or at shoulder level.
- A completed Restrictions form indicates you have pain with upper extremity movement and
  have limitation of motion.  Medication has been prescribed, and you were referred for
  exercise consultation.  No office notes, test results or exercise progress notes were provided.

The Medical Board's review of your current claim information was based on your current restrictions
and limitations due to your disabling condition.  The medical documentation provided does not
support your disability claim.  Dr. Singer did not provide sufficient medical evidence to establish that
your osteoarthritis is of a nature and severity which would prevent you from performing the material

and substantial duties of your own occupation as a Senior Cash Paying Teller. Therefore, you do not meet your plan's definition of disability, and we must deny your claim.

This claim determination reflects an evaluation of the claim facts and plan provisions. The Medical Board reserves the right to make a determination on any additional information that may be submitted.

You may request a review of this denial by writing to:

The Liberty Life Assurance Company of Boston
**Attn: Marcia Stacy**
IDM, Mailstop 02G
PO Box 1507
Dover, NH 03821-1507

The written request for review must be sent within 60 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied. If Liberty does not receive your written request for review within 60 days of your receipt of this notice, this claim decision will be final, and no further review of your claim will be conducted. In your request for review, include documentation such as detailed medical reports from your attending physicians that document objective medical evidence, including office notes, and test results, and progress notes from a physical therapy or exercise program, which you feel will support your claim. You may request to receive, free of charge, copies of all documents relevant to your claim.

Under normal circumstances, you will be notified of the final decision within 90 days of the date that your request is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 90 additonal days after your request for review is received.

Nothing in this letter should be construed as a waiver of any of The Federal Reserve Employee Benefit's rights and defenses under the above captioned plan, and all of these rights and defenses are reserved to the Plan Sponsor, whether or not they are specifically mentioned herein.

If you have any questions about this determination please call me.

Sincerely,

Marcia Stacy
Disability Case Manager
1-800-210-7140 Ext. 38426
fax 1-800-404-9219

cc:     FRB Boston via fax

EXHIBIT 5

Brent Vahle
Case Manager
Disability Management Solutions



**CIGNA** Group Insurance
Life · Accident · Disability

**FedEx Tracking Number: <u>8465 0002 5490</u>**

May 4, 2004

Routing  212
12225 Greenville Avenue
Suite 1000
Dallas, TX 75243
Telephone  800.352.0611, x 5624
Facsimile  860.731.3413
brent.vahle@cigna.com

LAW OFFICES OF PATRICIA MICHAELS
ELLEN R. VENUS
10 TREMONT STREET
4TH FLOOR
BOSTON, MA 02108

Re:    Concetta Nyman
       Policy #: NHD 963007
       Policyholder: Federal Reserve Bank
       Life Insurance Company of North America

Dear Ms. Venus:

Please be advised that Ms. Nyman's claim for Long Term Disability benefits has been disapproved based upon the submitted medical information.

On April 6, 2004, Ms. Nyman's file was forwarded to the Federal Reserve Bank Medical Board, along with all objective and subjective medical information submitted along with the appeal, for review of the original decision to deny her benefits on December 3, 2003.

On April 26, 2004, the file was received back from the Medical Board.  The final determination is that, while Ms. Nyman may have some pain, and may indeed be limited to lifting no more than 20-25 pounds with no overhead reaching, the objective medical contained in the file is insufficient to support a claim of totally disability.  As a result, we are reaffirming our decision to deny Ms. Nyman's claim for Long Term Disability benefits.

**It is important to note that determinations rendered by the Medical Board under the plan are binding and conclusive.  Therefore, no further evidence will be accepted.**

Should you have any questions, please do not hesitate to call.

Sincerely,

Brent Vahle

Cc:    Boston Branch

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by

EXHIBIT 6

# FEDERAL RESERVE BANK
## OF BOSTON



P.O. Box 2076
Boston, Massachusetts 02106-2076

*Sent via: US Mail and FedEx*

May 7, 2004

Ms. Concetta Nyman
30 Suffolk Ave., #2
Swampscott, MA 01907-1127

Dear Ms. Nyman:

You have been out on sick leave from your job as a Senior Paying Teller in the Cash Services Department since April 3, 2003.

After receiving notice and submitting the required forms, you qualified for and used the 16 weeks of Family and Medical Leave available to you under the Bank's Family and Medical Leave Policy. Under the terms of the Bank's Long Term Disability (LTD) plan, an employee who has been totally disabled for six months may apply for LTD. Your LTD claim has been denied, however you had until March 31, 2004 to appeal that decision.

The Bank's sick leave policy (section 3.21 of the Personnel Policies and Practices Manual) states that an employee may not exceed one calendar year of continuous absence. While you were waiting for a decision on your LTD appeal we placed you on a leave of absence (no pay status).

Your LTD appeal has been denied. Accordingly, your employment with the Federal Reserve Bank of Boston has been terminated effective April 3, 2004.

You need to call the Benefits Express Center at 1-877-377-2255 to process your retirement, thrift plan, health and dental transactions.

Sincerely,

Karen Foley
Employment Services Administrator

xc:    John Kroen, AVP Human Resources
       Leah Maurer, AVP Cash Services