UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

DOCKET NO. 05-10412-JLT

```
*****************************
CONCETTA NYMAN              *
     PLAINTIFF              *
                            *
V.                          *
                            *
FEDERAL RESERVE BANK        *
OF BOSTON                   *
     DEFENDANTS             *
*****************************
```

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff in the above-captioned matter and respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment. In support thereof, Plaintiff states that she is entitled to relief and further states that genuine issues of material facts exist.

**UNDISPUTED MATERIAL FACTS**

The Plaintiff was employed by the Defendant for approximately 35 years (Exhibit 1, para.2). On or about July 25, 2001, the Plaintiff began to suffer from bilateral frozen shoulders due to her work (Exhibit 1, para.3). The Defendant terminated Plaintiff's employment by letter dated May 7, 2004, and informing the Plaintiff of an official termination date of April 3, 2004 (Exhibit 2; Def. Ex.1, p.10) Plaintiff filed a complaint of discrimination on June 21, 2004 ( Ex.1). Prior to Plaintiff's termination, she was given a 10 lb. lifting restriction with no pushing or pulling(Def. Motion, p.3; Def. Ex.1, pp.37-40) Because of these restrictions, Plaintiff was placed

1

in a job in the high speed sorting area. When Plaintiff assumed this job on or about February 12, 2001, her duties allowed her to work within her restrictions, and her supervisor did not require any work beyond the restrictions.(Def.Ex.1,pp.40-42) However, after some time the Plaintiff's supervisor refused to honor the restrictions placed on Plaintiff's duties, forcing her to stop working (Def. Ex.1,pp.43, 47-51) Plaintiff reported this to her doctor at the time (Ex.3) Plaintiff voluntarily performed some of these "extra" duties at one point, but then became incapable of performing them (Def. Ex.1, pp.48-49) Despite her inability to perform duties above her restrictions, Plaintiff was told by her supervisors that such restrictions were "unacceptable" (Def. Ex.1, pp.48-51; Ex.3) Plaintiff was forced to reach over her head, push heavy containers, and lift more than 10 pounds (Def. Ex.1, pp.48-51, 59,61; Ex.3)

Presently, the Plaintiff's impairment poses limits on her life activities which include an inability to do anything at all following such usual activities as showering as well as other problems(Def.Ex.1, pp.88-91) However, at the time of the alleged discrimination, Plaintiff's condition impaired her life activities in a very significant degree, and she couldn't do anything, was totally exhausted, had problems sleeping for more than four hours, and woke with headaches and nausea (Ex.5; Ex.6)

## ARGUMENT

**1. Plaintiff's Claim is Not Time Barred.**

The Plaintiff filed her claim within 60 days from the date of her termination, which is when she knew that the Defendant did not intend to accommodate her.(Ex.1)

**2. The Defendant Refused to Provide Reasonable Accommodations to the Plaintiff**

As set forth in the statement of facts, the Plaintiff's managers refused to allow the Plaintiff to work within the restrictions ordered by her doctors and the Defendant's own nurse, and refused to make accommodations. This refusal not only exacerbated Plaintiff's condition but also forced her to stop working.

**3. The Plaintiff's Condition Constituted a Disability.**

A disability under the ADA is a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C. 12102(2)(A)-(C); see also Santiago Clemente v. Executive Airlines, 213 F.3d 25, 30 (1st Cir. 2000). In order to determine whether plaintiff is disabled under the ADA, the Court must conduct a tripartite analysis. Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002); Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, plaintiff must prove that he suffers from a physical or mental impairment. Carroll, 294 F.3d at 238. Second, the Court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity. Id. Lastly, "tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity." Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-40 (1st Cir. 2001); see also Gelabert-Ladenheim v. American Airlines, 252 F.3d 54, 55 (1st Cir. 2001). Furthermore, plaintiff must possess a record of such impairment and be regarded as having such an impairment. 42 U.S.C. 12102(2); 29 C.F.R. 1630.2(e)(2)(g)(1)(2)(3).

According to the EEOC regulations, "substantially limit[ed]" means "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29

3

C.F.R. 1630.2(j) (2001). The court assesses whether an individual is substantially limited in a major life activity in light of the following factors: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. 1630.2(j)(2)(I)-(iii). *See also* Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-97 (2002). The Supreme Court has held that the determination of disability focuses on the medical condition's actual effect on the specific plaintiff. Sutton v. United Air Lines, Inc., 527 U.S. 471, 488-89 (1999). Albertsons, Inc. v. Kirkingburg, 527 U.S. 555 (1999) (holding that the ADA imposes a statutory obligation to determine the existence of disabilities on a case-by-case basis, based upon the actual effect of the impairment on the life of the individual in question). For example, in *Sutton,* the Court held that mitigating or corrective measures must be taken into account in judging whether an individual possesses a disability because doing otherwise would "run[] directly counter to the individualized inquiry mandated by the ADA." Id.

The EEOC regulation lists the following functions as major life activities: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i). This list is not exhaustive; functions such as sitting, standing, and lifting are also considered major life activities. 29 C.F.R. app. § 1630.2(i). The courts have held that sleeping is a major life activity. *See* Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999); *see also* Bond v. Sheahan, 152 F.Supp.2d 1055, 1064 (N.D. Ill. 2001).

## CONCLUSION

In the present case, the Plaintiff has satisfied all three prongs of the analysis. Plaintiff's condition caused her to suffer multiple limitations of major life activities, including work, sleeping, and personal care. The Defendant's focus on cases finding that the inability to lift certain weights is misplaced. The Plaintiff herein does not claim that "lifting" is a major life activity. As set forth in the above cited cases, it is the impact of the lifting restriction on major life activities that is the question to be addressed. She would have been able to continue in her work had the Defendant provided reasonable accommodations. Moreover, the accommodation requested was reasonable and would not have imposed any undue burden on the Defendant.

By Plaintiff's Attorney,

_____
DAVID GREEN, ESQUIRE
ALFORD & BERTRAND
60 Arsenal Street
Post Office Box 322
Watertown, MA 02471
(617) 926-8800
attorneys@alfordandbertrand.com

## CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 30, 2006.

_____
DAVID GREEN, ESQUIRE